

**BRUCE A. BLAKEMAN**
County Executive

**THOMAS A. ADAMS**
Acting County Attorney

**COUNTY OF NASSAU**
**OFFICE OF THE COUNTY ATTORNEY**

February 7, 2022

<u>Via ECF</u>
Hon. Roanne L. Mann, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>Davenport v. County of Nassau 19-CV-05097 (FB)(RLM)</u>

Your Honor:

The Nassau County Attorney's Office represents defendants County of Nassau, Nassau County Police Commissioner Patrick J. Ryder, Nassau County Police Department Appeals Officer Christopher J. Todd, Esq. and former Nassau County Sheriff Vera Fludd in the above referenced action. Together with Robert J. La Reddola, Esq. of the firm of La Reddola, Lester & Associates, LLP, attorneys for plaintiff Russell Davenport ("Davenport"), in accordance with Your Honor's January 7, 2022 order, the parties hereby submit this joint letter briefing each side's position with respect to the disputed legal issues in this case in advance of the court conference scheduled for February 23, 2022 at 9:45 a.m.

**Summary of Undisputed Facts**.  Davenport is a former law enforcement officer and a certified firearms instructor. He carried a pistol license granted by the Nassau County Police Department as a retired law enforcement officer under Penal Law Section 400.00(2)(f).

On January 13, 2017 at approximately 4:30 a.m., Davenport confronted an individual he did not recognize peering into the window of the home where his granddaughter age 2 was sleeping at his home in Roosevelt.  At the same time as his wife called the police Davenport demanded the intruder put his hands up and get on the ground. The intruder did not comply and began to approach Davenport aggressively. Davenport had in his hand his former service pistol a Glock. The intruder attacked Davenport who lost his footing and accidently discharged his weapon into the ground.

The individual in Davenport's yard was an animal exterminator Davenport had hired to remove a raccoon in December 2016, but did not remove any raccoon nor did he perform any service. He charged Davenport a service fee which was paid, but later disputed. It was later found out from the Police that the intruder was allegedly planning to sue for additional money in small claims court and apparently trying to take photos in the yard at 4:30 AM. in pitch black darkness for his use as evidence.

The Nassau County's District Attorney Office prosecuted Davenport in connection with the events of January 13, 2017. The Grand Jury refused to indict. The Nassau County

**ONE WEST STREET – MINEOLA, NEW YORK 11501-4820**
**516-571-3056, FAX 516-571-6684, 6604**

DA then refiled misdemeanor charges against Davenport. However, these charges were also dismissed by the Judge on January 14, 2019. Davenport then requested the return of his Pistol license and firearms.

On February 10, 2019, the Nassau County Police Department's Pistol License Section revoked Davenport's pistol license and removed firearms, i.e. pistols and longarms from his possession, citing Davenport's "unlawful use of a firearm" and "lack of good moral character." Davenport was also told he was prohibited from owning any firearms at all including a rifle or shotgun by virtue of the revocation of his handgun license. No further investigation took place. Davenport unsuccessfully requested reinstatement of the pistol license to the Pistol License Section. After denial of that request, Davenport appealed the determination. Police Department Appeals Officer defendant Christopher V. Todd, Esq. affirmed the denial in writing, without a physical in-person hearing as is Police Department policy. Davenport commenced this suit challenging revocation of his pistol license and removal of all firearms from his possession and violation of his Civil Rights on behalf of himself and others similarly situated.

Davenport commenced this Class Action lawsuit on September 9, 2019.  Pursuant to 42 U.S.C. § 1983, Davenport seeks under 42 U.S.C. §1983 on behalf of himself and Class Members violation of his Second Fourth and Fourteenth amendment rights. (First Cause of Action), a Monell Claim for the unconstitutional policy (Second Cause of Action)   among other claims.
"
Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  By Memorandum and Order dated August 9, 2021, Hon. Frederic Block granted in part and denied in part defendants' motion.  *Davenport v. Cty. of Nassau*, 2021 U.S. Dist. LEXIS 149130 (E.D.N.Y. Aug. 9, 2021).  Judge Block dismissed Davenport's § 1981 claim and all claims against the Nassau County Police Department and Nassau County Sheriff's Department, and held that the complaint plausibly stated causes of action under § 1983, *Monell*, and for replevin and conversion as against the County.

<u>**Plaintiff's Position as to the Legal Disputes in the Case**</u>

Plaintiff has brought this action to effect a positive change in the way the County treats the citizens of Nassau County and in particular minority gun owners. He seeks monetary remuneration as well as several temporary and permanent injunctions in this action on behalf of himself and class members. This relief sought in the complaint includes:

- **ENJOINING** Defendants from revoking a Nassau County pistol licenses "at any time"/ for any reason, unless the individual is also otherwise disqualified under Penal Law § 400 or Federal Law.

- **ENJOINING** Defendants from seizing or retaining any rifles or shotguns from the citizens of Nassau County; until such time that Defendants create a Constitutional policy for the return of the long arms upon an Order of Dismissal of the Order of Protection or Temporary Order of Protection,  under Nassau County Charter Article

XX, Section 2002 to their lawful owners who are under no legal infirmity to own a rifle or shotgun; or

▪     **DIRECTING** that prompt post-deprivation hearings to be conducted pursuant to *Razzano v. County of Nassau et. al.,* 07-CV-3983 (ADS)(AKT)(E.D.N.Y. February 28, 2011) for all shotguns and rifles owned by Plaintiff and the Class Members currently in the possession of Defendant County of Nassau and Nassau County Sheriff's Department; or

▪     **ENJOINING** and **DIRECTING** requiring the County of Nassau and Nassau County Sheriff's Department to (i) return all the long arms that it wrongfully possess' to the Class Members and (ii) institute a fair and adequate procedure for the handling of shotguns and rifles in County of Nassau and Nassau County Sheriff's Department that does not violate the due process requirements of the State and Federal Constitution; and (iii) notify those who were told they were barred from all firearms ownership that they are not longer under such prohibition; by implementing a *Krimstock* style hearing.

▪     Requiring education for all Nassau County officials related to firearms licensing, issuance, renewals and confiscation making clear the constitutional rights of firearms owners;

Nassau County has been unable to reform itself in the area of administration of Penal Law §400.00 in the issuance and control of handguns. It is my client's belief that the County can no longer be afforded unbridled discretion without judicial and non-judicial oversight. In order for this lawsuit to have the greatest possible benefit to the public, Plaintiff proposes the following:

1) The Sheriff's policy of removal of all firearms upon service of every Order of Protection without a Court Order must be stopped at once. In order to facilitate this long overdue change, the County should agree to waive qualified immunity for the individuals responsible for firmars removal without Judicial authority for this clear violation of the rights of the citizens of Nassau County.

2) The destruction by the Nassau County Police Department of non-contraband firearms must stop. The County must enact a *Krimstock* style hearing where the burden of the returned of property is upon the County and not upon the property owner. In order to facilitate this long overdue change, the County should agree to waive qualified immunity for the individuals responsible for this clear violation of the rights of the citizens of Nassau County.

3) The banning of all firearms ownership upon the loss of a County issued pistol license must be stopped at once. In order to facilitate this long overdue change, the County should agree to waive qualified immunity for the individuals responsible for this clear violation of the rights of the citizens of Nassau County.

4) Internal Police, Sheriff and County Attorney education on Second Amendment rights must be implemented.

4) External education to the public on the process to apply for legal gun ownership should be implemented. In order to address the historical low gun ownership in the black community, a program be instituted to create a community liaison between the Nassau County Police Department Pistol license section and the community. Arch Bishop Davenport is willing to serve on such a committee. The goal will be to deter illegal guns from being sought and instead to promote legal gun ownership through the Nassau County Police Department.

5) A civilian oversight committee should be created to oversee the statistical results of these programs to ensure the success of this settlement agreement in promoting legal gun ownership and deterring illegal guns. My client would agree to serve on such a committee.

6) A building site such as the Harry D. Daniels building in Roosevelt be made available for public meetings between the Nassau County Police Pistol License Section and the community to promote this cooperation in the area of preventing illegal gun ownership and promoting the benefit of legal gun ownership.

7) Nassau County must recognize the home premises pistol license issued under the "shall issue" standard. Proper cause pistol licenses when issued should have no further restrictions such as "target".

8) An appropriate monetary settlement for this case, and all other cases currently pending against the County including *Henry* and *Fusco*.

9) Restoration of the retired law enforcement pistol license of *Davenport, Fusco* and *Henry* including notification of all police agencies inducing the New York State Police Database.

### Defendants' Position as to the Legal Disputes in this Case

Plaintiff alleges at ¶ 62 of the Complaint that "defendants," including both the Nassau County Police Department and the Nassau County Sheriff's Department, have "deliberately misread and misapplied [New York] Penal Law 400 to create and enforce an unconstitutional police aimed at reducing the overall firearms ownership of Nassau County citizens, in particular in the minority community, attacking both the granting and continued possession of firearms licenses with its unconstitutional 'at any time' policy."[1]

At the outset, it is necessary to set forth the statutory framework underlying ownership of firearms in New York State.  As the Hon. Anne M. Donnelly explained in *Juzumas v. County of Nassau*, 471 F.Supp. 3d 178 (E.D.N.Y. 2019), New York State's firearm regulations define different types of guns. A "firearm" is a pistol, a revolver, a sawed-off shotgun or rifle, or an assault weapon. N.Y. Penal Law § 265.00(3). A "rifle" is "a weapon . . . intended to be fired from the shoulder [that] use[s] the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." *Id.* at § 265.00(11). A "shotgun" is "a weapon ... intended to be fired from the shoulder [that] use[s] the energy of the explosive in a fixed shotgun shell to fire through a

---

1 Judge Block dismissed Davenport's racial minority discrimination claim under 42 U.S.C. § 1981, *see Davenport*, 2021 U.S. Dist. LEXIS 149130 at *6-7.

smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." *Id.* at § 265.00(12). Rifles and shotguns are known as long guns or longarms. *See Dudek v. Nassau Cnty. Sheriffs Dep* 7, 991 F. Supp. 2d 402, 407 n.7 (E.D.N.Y. 2013) (comparing longarms with other guns).

New York State prohibits the possession of a firearm without a license. N.Y. Penal Law § 265.20(a)(3). Section 400.00 of the New York Penal Law –"the exclusive statutory mechanism for the licensing of firearms in New York State," *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85-86 (2d Cir. 2012) (citation omitted) - provides licensing officers with ""road discretion in determining whether to issue or revoke a license to possess firearms." *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 231 (E.D.N.Y. 2019) (citation omitted). Applicants for firearm licenses must meet certain criteria, including:

- They must be twenty-one years old or older, and of good moral character.

- They must not have convictions for a felony or serious offense.

- They must not have a history of mental illness.

- There must be "no good cause ... for the denial of the license."

*See* N.Y. Penal Law § 400.00(1).

Longarms, on the other hand, "pose a unique legal issue because, unlike other firearms, 'there is no license requirement for the purchase or possession of longarms.'" *Panzella v. Cnty. of Nassau*, No. 13-CV-5640, 2015 U.S. Dist. LEXIS 133475, 2015 WL 5607750, at *1 (E.D.N. Y. Aug. 26, 2015) (citing *Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011)). Nevertheless, the possession of longarms is subject to some regulation in New York. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 n.3 (2d Cir. 2012) (citing N.Y. Penal Law § 265.01(3) (prohibiting longarms on school grounds) and N.Y. Penal Law § 265.05 (prohibiting children less than sixteen years old from possessing longarms without a hunting permit)).

Firearm licensing and longarm regulation converge in Section 400.00's subsection on license revocation and suspension. *See* N.Y. Penal Law § 400.00(11). Section 400.00(11)(a) provides the following:

> (a) The conviction of a licensee anywhere of a felony or serious offense or a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record; a license issued pursuant

to section 400.01 of this article may be revoked and cancelled at any time by the licensing officer or any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

N.Y. Penal Law § 400.00(11) (emphasis added).

Section 400.00(11)(c) governs the consequences of license suspension and revocation:

> (c) In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency as provided in subparagraph (f) of paragraph one of subdivision a of section 265.20 of this chapter. In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.

N.Y. Penal Law § 400.00(11)(c) (emphasis added).

**The Nassau County Police Department's Policy**. Under the Nassau County Police Department's current interpretation of Penal Law § 400.00 and as set forth in the Pistol License Handbook, any person whose pistol license is suspended must immediately surrender his license, his pistols and longarms, in Davenport's case, when he was arrested on January 13, 2017. With respect to surrendered pistols, the Police Department's Pistol License Section conducts an investigation and may return the license, suspend the license or revoke the license. In the case of suspension or revocation, the license holder may file an administrative appeal with Police Department Appeals Officer Christopher V. Todd, Esq. The owner may submit any materials to support his claim for restoration of his license.

In determining whether to revoke a pistol permit pursuant to Penal Law § 400.00 (11), the respondent is vested with broad discretion to resolve factual and credibility issues, and his determination is accorded great weight (*see Matter of Manne v Main*, 8 AD3d 790, 791, 778 NYS2d 210 (2004); *Matter of Gerard v Czajka*, 307 AD2d 633, 762 NYS2d 533 (2003). Contrary to the Davenport's contention, "a formal adversarial hearing is not required before a pistol license is revoked" (*Matter of Gordon v LaCava*, 203 AD2d 290, 290-291, 610 NYS2d 66 (1994); *see also Matter of Dlugosz v Scarano*, 255 AD2d 747, 681 NYS2d 120 (1998), *appeal dismissed* 93 NY2d 847, 710 NE2d 1092, 688 NYS2d 493 (1999), *lv denied* 93 NY2d 809, 716 NE2d 696, 694 NYS2d 631 (1999), *cert denied* 528 US 1079, 145

L Ed 2d 673, 120 S Ct 798 (2000); *Matter of St.-Oharra v Colucci,* 67 AD2d 1104, 415 NYS2d 142 (1979). "[A] formal hearing is not required prior to the revocation of a pistol permit as long as the licensee is given notice of the charges and has an adequate opportunity to submit proof in response" (*Matter of Dlugosz v Scarano, supra* at 748; *see Matter of Strom v Erie County Pistol Permit Dept.*, 6 AD3d 1110, 776 NYS2d 685 [2004]; *Matter of Dlugosz v Scarano, supra*; *Matter of Burke v Colabella*, 113 AD2d 794, 493 NYS2d 429 [1985]); *Pacicca v. Allesandro*, 19 AD3D 500,798 NYS2d 462 (2005).

Although an individual challenging a pistol license revocation must be provided with both notice of the charges and the evidence against him and have an opportunity to appear with his lawyer to rebut the charges, the owner does not have a due process right to an evidentiary hearing, a personal appearance is not mandated.  *See Strom v. Erie County Pistol Permit Dept.*, 6 AD3d 1110, 776 NYS2d 685 (2004).

If a pistol license holder also owns longarms which are confiscated upon arrest, the Pistol License Section performs what is called a "Long Gun Review" similar to the process employed to investigate whether a pistol license should be suspended or revoked and provides the longarms owner with the same appeals process as applies to pistol licenses. If the longarms owner is determined to constitute a threat to the public, the Police Department retains the longarms and may commence a forfeiture action in Supreme Court, Nassau County.  However, the longarms owner may sell the longarms to a licensed federal firearms license or other transfer ownership to anyone he chooses.

In *Razzano v. County of Nassau*, 765 F. Supp.2d 176 (E.D.N.Y. 2011), involving the confiscation of plaintiff's longarms by the Police Department, the court held that the Police Department must provide a "prompt post-deprivation hearing" after seizing the longarms. 765 F.Supp. 2d at 191. The Second Circuit cited *Razzano* in *Panzella v. Sposato*, 863 F.3d 2010 (2d Cir. 2017) for the same proposition.

Under the above-cited case law, it is the Police Department's position that the administrative appeal process described above provides the license owner, and the longarms owner, with sufficient constitutional due process under the Fourteenth Amendment.  An in-person physical hearing is not required.  The administrative review process providing the owner the right appeal constituted sufficient due process.

**Davenport is Free to Possess New Longarms**.  Contrary to Davenport's contention that the Police Department bans ownership of longarms in total if a pistol license is revoked, in a change in policy since Davenport's license was revoked, the Police Department now interprets § 400.00(11) to allow the former pistol license holder to purchase or otherwise obtain new longarms even if his pistol license is revoked.  Thus, even while his pistol license remains revoked, Davenport is free to purchase or otherwise obtain new longarms.

In sum, both in the revocation of Davenport's pistol license and his desire to possess longarms, the Police Department provides constitutional due process in compliance with the Due Process Clause of the Fourteenth Amendment.

**The Nassau County Sheriff's Department Position**. Davenport named as defendants the Nassau County Sheriff's Department and Nassau County Sheriff Vera Fludd. Complaint, ¶¶ 22-23. However, only the Police Department was involved in arresting Davenport by revoking his pistol license and confiscating his firearms. The Sheriff's Department was not involved in any way with Davenport.

Despite the total absence of any involvement by the Sheriff's Department in this lawsuit, the Complaint indirectly alludes to the Sheriff's Department at ¶ 71 of the Complaint citing the New York Family Court Act:

> 71. Moreover, upon information and belief, the Defendants have extended this unconstitutional policy to apply this same power to remove all firearms from the home from citizens involved in Family Court proceeding even where the Temporary Order of Protection issued under the Family Court Act, Article 4, 5, 6, 8 and/or 10 did not include in the Order "box 12", to "Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed.

There is no other mention of or reference to the Sheriff's Department in the Complaint.

To clarify the issue for the Court, Davenport is obviously referring to Family Court Act § 842-a, which is included in Penal Law § 400.00(11)(a) providing in pertinent part, "A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act." When the Family Court in Nassau County issues a Temporary Order of Protection ("TOP") or Order of Protection ("OOP") Deputy Sheriffs from the Sheriff's Department serve the TOP or OOP upon the respondent. Under Penal Law § 400.00(11)(c) and the Police Department's Pistol License Handbook, the service of a TOP or OOP results in the immediate suspension of a pistol license:

> (c) In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency[.]

At the time of service, a Deputy Sheriff serving a TOP or OOP will ask the respondent if he owns a pistol license and if so, asks the respondent to surrender his pistol license and all pistols. Contrary to plaintiff's counsel's belief as expressed in other court actions, unless the box on the TOP or OOP contains the provision to remove all firearms, the Deputy Sheriff will *not* remove the pistol license owner's longarms.

The Deputy Sheriff will take the pistols to the Police Department, which will investigate the incident and proceed to return, suspend or revoke the pistol license. However, if the box on the TOP or OOP includes the Family Court Judge's order to remove all firearms,

the Deputy Sheriff will ask the respondent to surrender longarms in addition to the pistol license and pistols. The Deputy Sheriff then takes the longarms to the Sheriff's Department's Armory for storage.

Under Sheriff's Department policy effective April 8, 2019 an owner of surrendered longarms may apply directly to the Sheriff's Department for their return. Upon termination, dismissal or other final disposition of the TOP or OOP, the weapon owner or legal representative may contact the Sheriff's Department seeking the return of a previously surrendered/confiscated long gun. The weapon owner or legal representative must provide a certified copy of the termination, dismissal or other final disposition of the TOP or OOP,  and a formal written request for the return of the long gun.  Sheriff's Department staff will initially verify that the TOP or OOP at issue has been fully and finally disposed by the Court, and that no other TOP or OOP involving the weapon owner are in existence as of that time. The weapon owner/legal representative will be notified in the event that an OOP prohibiting the return of the long gun remains  in effect within ten (10) business days of receipt of the initial request by the Sheriff's Department.

The Sheriff's Department will then perform a criminal background check using the National Instant Criminal Background Check System ("NICS") and investigate whether the owner has any outstanding criminal warrants or active warrants or Orders of Protection. If the results are negative, the Sheriff's Department will return the longarms to the owner. Therefore, contrary to Davenport's contention, the Sheriff's Department does *not* impose a total ban on ownership of pistols or longarms when a TOP or OOP is served, or a pistol license is revoked.

**Defendants' Present Position**. (1) Since Davenport's pistol license was revoked on February 19, 2019 he can apply for a new license after the five-year waiting period expires on February 19, 2023. (2) Anyone whose pistol license is revoked is able to possess longarms (other than those surrendered at the time of arrest by the Police Department).  (3) The Sheriff's Department confiscates from a respondent upon service of a TOP or OOP only if the Family Court Order contains the checked box directing such surrender, otherwise, only the pistol license and pistols will be surrendered pursuant to Penal Law § 400.00(11)

The parties look forward to speaking with Your Honor at the conference scheduled for February 23, 2022 at 9:34 a.m.

Respectfully submitted,                              Respectfully submitted,

/s/ Robert J. La Reddola Esq.                    /s/  Ralph J. Reissman
ROBERT J. LA REDDOLA, ESQ.              RALPH J. REISSMAN
                                                              Deputy County Attorney